IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION


CHRISTOPHER ADAM DULWORTH          )
                                   )
v.                                 )          No. 2:19-0035
                                   )
ANDREW M. SAUL                     )
          Commissioner of          )
          Social Security          )


**To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge**


## R E P O R T   A N D   R E C O M M E N D A T I O N

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") terminating both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") previously awarded to him under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (*see* Docket Entry ("DE") 18), to which Defendant has responded. (*See* DE 20). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (*See* DE 4).

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (DE 18) be **DENIED**.

# I. INTRODUCTION

This case involves cessation of DIB and SSI benefits, which the Commissioner initially awarded to Plaintiff on April 29, 2011. (*See* Transcript of the Administrative Record (DE 14) at 71-73).[1] After revisiting Plaintiff's disability status years later, the Commissioner determined that Plaintiff no longer met the relevant disability requirements and thus discontinued his benefits. (AR 12-14). Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared and testified at a hearing before ALJ Todd Spangler on May 8, 2017. (AR 34). On December 13, 2017, the ALJ issued a decision unfavorable to Plaintiff. (AR 12-14). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 27, 2019 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on December 13, 2017. (AR 12-14). Based upon the record, the ALJ made the following enumerated findings:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated April 29, 2011. This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the claimant had the following medically determinable impairments: status post lumbar discectomy; status post right ankle surgery; chronic pain syndrome; mild mental retardation; and learning disorder.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) on the bottom right corner of each page.

4. The medical evidence establishes that, since March 13, 2015, the claimant has had the following medically determinable impairments: history of lumbar disc herniation with radiculopathy, status post discectomy; hypertension; right knee pain, status post-surgery; lateral patellar instability; leg length discrepancy, left greater than right; and intellectual disorder. These are the claimant's current impairments.

5. Since March 13, 2015, the claimant has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

6. Medical improvement occurred on March 13, 2015 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

7. Since March 13, 2015, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform less than the full range of light work. He could lift/carry 20 pounds occasionally and 10 pounds frequently. He could stand, sit, and/or walk about six hours. Occasionally climb ladder/rope/scaffolds. He could perform simple, low-level detailed tasks. He could appropriately interact with the general public, supervisors and peers. He could set and pursue realistic work goals.

8. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii) and 416.994(b)(2)(iv)(B)).

9. Since March 13, 2015, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6) and 416.994(b)(5)(v)).

10. Since March 13, 2015, based on the current impairments, the claimant has had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant could lift/carry no more than 40 pounds. He could climb no more than occasional ramps and stairs or occasional ladders, ropes and scaffolds. The claimant is limited to simple and low-level detailed tasks, where changes are introduced gradually and infrequently.

11. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

12. On March 13, 2015, the claimant was a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

13. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

3

14. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

15. Since March 13, 2015, considering the claimant's age, education, work experience, and residual functional capacity based on the current impairments, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

16. The claimant's disability ended on March 13, 2015, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

AR 17-26.

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the Commissioner's decision is supported by substantial evidence and (2) whether the proper legal criteria were applied to the Commissioner's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

4

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs*., 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

### 1. Initial Review Framework

On initial review of an application for disability benefits, the Commissioner engages in a five-step evaluation. 20 C.F.R. §§ 404.1520(a), 416.920(a). First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the claimant is not disabled

if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

### 2. Cessation of Benefits Framework

Recipients of disability benefits are subject to periodic review of their continued entitlement to such benefits. 20 C.F.R. §§ 404.1594(a), 416.994(a). An individual is not entitled to a presumption of continuing disability merely because he received an award of disability benefits in the past. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994) (explaining that the lower court erred by applying a presumption of continuing disability). The Commissioner must review the individual's evidence "on a neutral basis." 20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(1)(vi). If substantial evidence demonstrates that the individual is able to engage in substantial gainful activity as a result of medical improvement related to the individual's ability to work, the Commissioner will terminate the award of disability benefits. 42 U.S.C. § 423(f).

To determine if the individual continues to be disabled, the ALJ utilizes an eight-step evaluation for DIB claims and a seven-step evaluation for SSI claims. 20 C.F.R. §§ 404.1594(f)(1), 416.994(b)(5). The analyses for DIB and SSI claims are the same except that step one of the DIB evaluation includes the additional threshold consideration of the claimant's performance of substantial gainful activity. *Id*. Otherwise, steps two through eight in DIB claims are identical to steps one through seven in SSI claims.

6

At step one for DIB claims, the ALJ determines whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* At step two for DIB claims and step one for Title XVI claims, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1594(f)(2), 416.994(b)(5)(i). If the claimant does, his disability continues and the analysis ends; if not, the analysis continues. *Id.*

At step three for DIB claims and step two for SSI claims, the ALJ determines whether the claimant has experienced medical improvement. *Id.* §§ 404.1594(f)(3), 416.994(b)(5)(ii). Step four for DIB claims and step three for SSI claims requires the ALJ to determine whether any medical improvement is related to the claimant's ability to work. *Id.* §§ 404.1594(f)(4), 416.994(b)(5)(iii). If there has not been medical improvement or if the medical improvement is unrelated to the claimant's ability to perform work, the ALJ must continue to step five for DIB claims and step four for SSI claims, which considers whether any exceptions to the medical-improvement standard apply. *Id.* §§ 404.1594(f)(5), 416.994(b)(5)(iv).

If there has been medical improvement related to the claimant's ability to work or an exception to the medical-improvement standard applies, the remainder of the ALJ's continuing-disability analysis mirrors the initial review analysis. At step six for DIB claims and step five for SSI claims, the ALJ determines whether the claimant's current impairments in combination are severe. *Id.* §§ 404.1594(f)(6), 416.994(b)(5)(v). At step seven for DIB claims and step six for SSI claims, the ALJ evaluates the claimant's RFC based on his current impairments and determines if he can perform past relevant work. *Id.* §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the claimant cannot perform past relevant work, the ALJ proceeds to the last step of the evaluation and determines

whether a significant number of other jobs exist in the national economy that the claimant can perform. *Id.* §§ 404.1594(f)(8), 416.994(b)(5)(vii). If the claimant can perform other work, he is no longer disabled; if he cannot perform other work, his disability continues. *Id.*

"The ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue*, 247 F. App'x 761, 765, 768 (6th Cir. 2007) (citing 20 C.F.R. § 404.1594(b)(5), (f)(7)). The Commissioner bears the burden of proving both that "the severity of a claimant's impairment has medically improved, and that the claimant is now able to perform substantial gainful activity." *Little v. Comm'r of Soc. Sec.*, No. 1:12-cv-949, 2014 WL 656737, at *4 (S.D. Ohio Feb. 19, 2014) (citing 42 U.S.C. § 423(f)(1)).

**C. Plaintiff's Assertion of Error**

Plaintiff asserts generally that (1) the ALJ erred in finding that his medical condition has improved, and (2) that the ALJ erred by concluding that his condition does not meet Listing 12.05C. (DE 19 at 11-12). Plaintiff therefore requests that this case be "reversed or remanded" for further consideration. (*Id*. at 13).

**1. Medical Improvement Finding**

The initial administrative decision issued on April 29, 2011 ("CPD") found that Plaintiff was disabled due to the severity of his physical and mental impairments. (AR 78-81). The ALJ found that Plaintiff could perform a "limited range of light" work but that the additional consideration of "moderately-severe to severe pain" precluded even unskilled, sedentary work. (AR 78-79). The ALJ provided no specific limitations with respect to Plaintiff's mental condition but stated that he "accepts" the conclusions of Jerell Killian, a consultative examiner, who opined

that Plaintiff functioned in the "mild mental retardation" range. (AR 79-80).[2] The ALJ concluded his opinion by recommending a continuing disability review three years after the administrative decision because medical improvement was "expected with appropriate treatment." (AR 82).

Plaintiff argues that since the CPD on April 29, 2011, his physical condition has actually worsened. (DE 19 at 11). Plaintiff claims that he continues to be limited to less than sedentary work and has additionally been beset by disabling hip pain. (*Id*. at 11).

The Court first notes that Plaintiff's brief fails to identify any actual error in the ALJ's analysis. He instead cites broadly to records documenting treatment between December 2015 and March 2017 (DE 19 at 11), yet the notes from this time period demonstrate minimal treatment and relatively mild physical findings. On January 26, 2016, straight leg raise tests, which evaluate whether a patient suffers from sciatica, were negative. (AR 460). On May 9, 2016, a treating provider diagnosed Plaintiff with low back pain without sciatica and recommended only that he utilize "ice" and "rest." (AR 487). On May 16, 2016, Plaintiff demonstrated normal motor strength and tone, normal movement of extremities, normal gait, and normal station. (AR 469-71). Plaintiff again exhibited normal physical examination findings on November 16, 2016, at which time he was again diagnosed with "low back pain." (AR 473-76). Such mild findings are inconsistent with the existence of a disabling condition. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014) ("Had [Plaintiff] suffered from severe pain associated with [his] back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning

---

[2] The phrase "intellectual disability" has replaced the previous term "mental retardation" in Listing 12.05, although the criteria contained in the listing have not been substantively changed. *See Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 982 n.1 (11th Cir. 2013).

on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations.").

Records documenting treatment in 2017 are similarly unremarkable. On February 16, 2017, a physical examination demonstrated the absence of numbness, tingling, and weakness, as well as normal motor strength, normal gait, and normal station. (AR 533-34). A subsequent MRI on March 22, 2017, which showed degenerative disc disease without neural compression at the L3-4 level, substantiates these mild findings. (AR 491-94). Notably, a treating physician postulated that Plaintiff's most pressing concern was not the presence a back ailment, but a lack of motivation to improve his condition: "He seems very lax of motivation for rehabilitative recoveries. I expressed the importance of this to him, but I do not appreciate any neurological indication or issue." (AR 489-90). Such evidence undermines Plaintiff's allegations of disabling back pain. *See Rogers*, 486 F.3d at 247-48 ("Consistency between Plaintiff's subjective complaints and the record evidence tends to support the credibility of the claimant, while inconsistency … should have the opposite effect.").

Despite Plaintiff's contention otherwise, there is also no evidence that his hip condition rises to the level of a disabling impairment. The only records cited by Plaintiff consist of an x-ray performed on December 10, 2015, which showed no abnormalities in the right hip (AR 429), and an accompanying physical examination that yielded almost entirely normal findings, including a full range of motion in both hips. (AR 434). The mere fact that Plaintiff reported hip pain does not establish the existence of a disabling impairment. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition.").

Nonetheless, the Court notes that the salient issue, although not articulated in Plaintiff's brief, is whether the ALJ's decision sufficiently compared Plaintiff's current RFC with his level of functioning at the time of the CPD. *See* 404.1594(f)(4) (if there is medical improvement, Commissioner must determine "whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination"). In cases involving cessation of benefits, it is important that the ALJ endeavor to explain how the severity of the subject claimant's condition has decreased since the CPD. *See Kennedy*, 247 F. App'x at 765 ("While the ALJ correctly pointed to various functional abilities possessed by Kennedy … no effort was made by the ALJ nor any medical source to *compare* her abilities or her limitations to those possessed at the time of the initial determination.") (emphasis in original). The Court finds that the ALJ's effort on this front was inadequate.

As an initial matter, the Court recognizes that the current ALJ's task was complicated by the previous ALJ's failure to delineate a function-by-function assessment that identified Plaintiff's particular physical and mental limitations. There is, however, evidence that the previous ALJ accorded controlling weight to the opinion of Dr. Craig Maltman, who assigned the following restrictions: lifting/carrying no more than 20 pounds occasionally and less than 10 pounds frequently; standing and walking for two hours per workday; sitting for four hours per workday; a sit/stand option and unscheduled breaks every one to two hours; no climbing ladders, ropes, scaffolds, stairs, or crawling; and just occasional balancing, kneeling, and crouching. (AR 79). Dr. Maltman also concluded that Plaintiff's attention and concentration would be limited by frequent severe pain. (AR 79). There was thus some baseline to which the ALJ could have compared Plaintiff's current level of functioning.

Additionally, the ALJ failed to discuss the ostensible differences between Plaintiff's mental functioning at the time of the CPD and his current RFC. The initial administrative decision noted that Plaintiff suffered from "mild mental retardation" and a learning disorder, yet the ALJ did not include any specific mental restrictions in the RFC. (AR 78). In contrast, the current ALJ limited Plaintiff to "simple and low-level detailed tasks, where changes are introduced gradually and infrequently." (AR 20). The assignment of mental restrictions that were not included in the initial RFC at least superficially suggests an *increase* in the severity of Plaintiff's mental condition, regardless of Plaintiff's ability to work despite these limitations.

The Court again pauses to acknowledge that the current ALJ was at a disadvantage due to the initial ALJ's failure to elucidate the specific restrictions to which Plaintiff was subject as of the CPD. Nonetheless, the initial ALJ awarded benefits based on a combination of "exertional and non-exertional limitations" (AR 78), which is significant given that the latter category includes mental restrictions such as "difficulty maintaining attention or concentrating" and "difficulty understanding or remembering detailed instructions." 20 C.F.R. § 404.1569a(c)(1). The initial ALJ also granted full weight to the consultative examiner's report, which noted that Plaintiff, at the time of the CPD, had a "working memory weakness" and "significantly below average" findings with respect to verbal comprehension, perpetual reasoning, and processing speed. (AR 80). Despite these previous findings, the current ALJ provided no comparative analysis, which is notable given that testing in 2015 demonstrated that Plaintiff's full-scale IQ score was actually seven points *lower* than it was at the time of the CPD. (AR 122).

In sum, the instant administrative opinion simply does not connect the dots between the CPD and Plaintiff's current level of functioning. A sister district court has discussed why such an error is usually fatal:

12

> Fundamentally, what is missing from the ALJ's decision on medical improvement is any discussion of a *comparison* of Schweihofer's abilities and limitations as of May 24, 2016 and before that date based on the medical evidence purporting to show medical improvement … That is, the ALJ does not make a logical or evidential connection between the symptoms, signs and/or laboratory findings showing medical improvement and an increase in Schweihofer's functional capacity to perform work. Thus, the ALJ's medical improvement analysis is not supported by substantial evidence.

*Schweihofer v. Comm'r of Soc. Sec.*, No. 17-14222, 2019 WL 1339611, at *10 (E.D. Mich. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1327186 (E.D. Mich. Mar. 25, 2019) (emphasis in original). Here, despite finding that there has been a "significant decrease" in the severity of Plaintiff's physical *and* mental impairments (AR 19), the ALJ does little in the way of "assess[ing] the claimant's current RFC and compar[ing] it to [his] RFC at the time of the [CPD]." *Dupont v. Comm'r of Soc. Sec.*, No. 18-11310, 2019 WL 4296897, at *5 (E.D. Mich. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4277809 (E.D. Mich. Sept. 10, 2019).

Nevertheless, the Court must consider whether the decision as a whole supports the ALJ's ultimate finding of medical improvement notwithstanding the lack of meaningful comparison. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:17-cv-335-TRM-SKL, 2018 WL 5316028, at *6 (E.D. Tenn. Oct. 9, 2018), *report and recommendation adopted*, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018) ("If the decision had otherwise shown there was substantial support for ALJ Morehead's finding of medical improvement, any error in not specifying the evidence under the 'medical improvement' heading would be harmless.").

The CPD, though worded ambiguously, relied heavily on Plaintiff's allegations regarding the severity of his pain to find the existence of a disabling condition. (AR 78-80). The ALJ fully credited Plaintiff's claim that, on a scale of one to 10, his "average daily pain" was a 9. (AR 79). The instant ALJ, however, found that although Plaintiff's current impairment could reasonably be

13

expected to produce "some" of his alleged symptoms, his statements regarding the severity of the symptoms were "not entirely consistent" with the medical evidence. (AR 21). To support this finding, the ALJ discussed Plaintiff's conservative treatment since March 13, 2015, which included a combination of over-the-counter pain relievers and some prescription medication, as well as recommendations that Plaintiff exercise and lose weight. (AR 21-22). Such evidence tends to support the ALJ's finding that Plaintiff has experienced a decrease in pain. *See Blaim v. Comm'r of Soc. Sec.,* 595 F. App'x 496, 499 (6th Cir. 2014) ("Even the mildness of [the claimant's] treatment—mostly pain medication, weight loss, and exercise—suggested that his ailments were comparatively mild.").

As noted previously*,* the ALJ also discussed the consistently mild findings derived from physical examinations, including an absence of numbness, tingling, muscle aches, muscle weakness, or joint pain. (AR 22). Although imaging studies revealed "mild central canal and bilateral foraminal encroachment" in the lumbar spine, they showed otherwise normal findings with "minimal degenerative changes" and no neural compression. (AR 22-23). Such evidence similarly bolsters the ALJ's finding of medical improvement. *See Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015) (affirming ALJ's decision to discount credibility of Plaintiff's allegations based on "rather mild findings" from MRI studies).

Moreover, the ALJ discussed and granted great weight to the findings of medical providers who *did* compare Plaintiff's current condition with the RFC from the CPD. Dr. Bryce Cunningham, an orthopedic surgeon who performed a consultative examination of Plaintiff on January 10, 2015, recommended only physical therapy and opined that Plaintiff could lift and carry up to 40 pounds frequently. (AR 23-24, 319-20). Dr. Cunningham stated in his report that the more restrictive limitations recommended by Plaintiff's previous provider were "extremely uncommon"

given that seven years had passed since Plaintiff's 2008 spinal surgery. (AR 319). Notably, Plaintiff also reported to Dr. Cunningham that he was experiencing only "mild-to-moderate" pain (AR 317), which suggests a decrease in severity from the previous daily average of nine out of 10. (AR 79).

The ALJ also referenced a non-examining consultative report by Dr. James Gregory, who, after explicitly comparing the RFC from the CPD with Plaintiff's current functioning, opined that significant medical improvement had occurred. (AR 323-35).[3] Dr. Gregory highlighted Plaintiff's conservative treatment and the normal range of motion in his back and joints. (AR 324). Crucially, such discussion distinguishes the instant case from *Kennedy*, cited *supra*, and supports the ALJ's ultimate conclusion. *Cf.* 247 F. App'x at 765 ("[N]o effort was made by the ALJ *nor any medical source* to compare her abilities or her limitations to those possessed at the time of the initial determination.") (emphasis added).

Finally, the ALJ's findings with respect to Plaintiff's mental functionality, though a closer call, are supported by substantial evidence. As previously noted, the only specificity provided in the CPD regarding Plaintiff's mental condition involved a diagnosis of "mild mental retardation" and "below average" findings in the areas of memory, verbal comprehension, perceptual reasoning, and processing speed. (AR 80). The ALJ in the instant case referenced three medical providers, including one consultative examiner, all of whom concluded that Plaintiff currently operates at a "borderline intellectual functioning" level despite his full-scale IQ score of 62.

---

[3] The ALJ incorrectly stated that Dr. Gregory's opinion came from an "unnamed State agency medical consultant[]" (AR 24), which would have been problematic in light of the prohibition against relying on unsigned reports in a decision denying disability benefits. *See Cramer v. Astrue*, No. 1:08-cv-176, 2009 WL 2927286, at *6 (E.D. Tenn. Sept. 3, 2009) ("Although the Commissioner may rely on an unsigned report in a favorable decision, the regulations forbid the use of an unsigned report in an unfavorable decision.") (citing 20 C.F.R. § 404.1519n(e)).

15

(AR 24-25). In particular, the ALJ gave great weight to the findings of Dr. Andrew Phay, who determined that Plaintiff was subject to mild mental restrictions that included no significant limitation in 14 out of 20 work-related activities and only "moderate" limitation in the areas of memory, concentration and persistence, and adaptation. (AR 392-93). Such findings appear to represent an improvement in Plaintiff's mental functional capacity and provide support for the ALJ's determination that Plaintiff's current mental RFC permits him to perform jobs in the national economy.

It bears reiterating that if the ALJ's decision is supported by substantial evidence, reversal of that decision would be improper "even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005)). The current ALJ discussed Plaintiff's physical and mental condition at length in the administrative opinion, including the results of various examinations, reports, and other objective medical evidence, before concluding that Plaintiff could perform a range of light work as of March 13, 2015. (AR 20). This was perhaps the best that could be expected given the lack of specificity in the CPD regarding Plaintiff's functionality. The Court therefore finds that the ALJ's failure to specifically compare Plaintiff's prior RFC with his current RFC constitutes harmless error and concludes that substantial evidence supports the ALJ's ultimate finding of medical improvement.

### 2. Listing 12.05C

Plaintiff next faults the ALJ for concluding that his intellectual disability does not rise to the level of severity delineated in Listing 12.05C, which would automatically entitle Plaintiff to an award of benefits. (DE 19 at 12). Plaintiff also contends that the ALJ utilized an outdated version of Listing 12.05 in his analysis. (*Id.*). With respect to the latter argument, Plaintiff makes

16

no meaningful effort to explain how his current mental condition meets the criteria necessary to satisfy either version of Listing 12.05. The Court therefore undertakes its own analysis of which iteration of Listing 12.05 applies and whether Plaintiff satisfies the relevant requirements.

The revised requirements of Listing 12.05 became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). As part of these revisions, the Commissioner specifically noted that the rules would apply to "new applications filed on or after the effective date of the rules, *and to claims that are pending on or after the effective date.*" *Id.* (emphasis added). The instant claim was indisputably pending both at the time of the administrative hearing on May 8, 2017 and at the time of the ALJ's decision on December 13, 2017. (AR 12, 34). The ALJ thus properly applied the current version of Listing 12.05.

Plaintiff cites generally to a case from the Northern District of Ohio to claim that the ALJ should have applied "the old Mental Listings" (DE 19 at 12), although he fails to identify any language in the opinion that supports this contention. This is a significant omission given that the court in that case instead vacated the Commissioner's decision based on the failure of the ALJ and the Appeals Council to adequately evaluate whether the subject claimant continued to meet the requirements of *any* version of Listing 12.05. *See Drake v. Berryhill*, No. 1:17-cv-2404, 2018 WL 4689591, at *23 (N.D. Ohio Sept. 28, 2018) ("Under the particular circumstances presented herein, the Court finds it was error for the Appeals Council and ALJ to fail to address whether Drake met or equaled the requirements of Listing 12.05."). The case therefore has no bearing on the Court's analysis.

Turning back to the instant matter, the current version of Listing 12.05 has two paragraphs, labeled "A" and "B," which "apply to only intellectual disorder." 20 C.F.R. Pt. 404, Subpart P,

App. 1, 12.00A(3). To meet either Listing 12.05A or 12.05B, the claimant "must have significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and evidence that demonstrates or supports … the conclusion that [the claimant's] disorder began prior to age 22." *Id.* An "Intellectual disorder" meets Listing 12.05B when all three of the following elements are satisfied:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:
>
>> a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
>>
>> b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
>
> 2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> a. Understand, remember, or apply information []; or
>>
>> b. Interact with others []; or
>>
>> c. Concentrate, persist, or maintain pace []; or
>>
>> d. Adapt or manage oneself (see 12.00E4); and
>
> 3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Id.*, 12.05B.

The ALJ in the current case concluded that Plaintiff did not meet Listing 12.05A because he did not exhibit significant subaverage general intellectual functioning or significant deficits in adaptive functioning. (AR 18). The ALJ also noted that although Plaintiff was assigned a full-scale IQ score of 62 at one point, he did not demonstrate at least "marked" limitations in any of the four areas delineated under Listing 12.05B. (AR 18). These conclusions were based largely on a

18

consultative psychological examiner's report, co-authored by psychological examiner Alice Garland and Dr. Jerry Campbell, which found that Plaintiff was only "moderately" limited in his ability to perform manual tasks, his ability to persist and concentrate, and adaptative functioning, and not limited in his ability to work with the public. (AR 376-77). Such evidence lends support to the ALJ's ultimate conclusion that Plaintiff's mental condition does not meet Listing 12.05. *See Quinlan v. Comm'r of Soc. Sec.*, No. 1:14-cv-427, 2015 WL 3447844, at *11 (S.D. Ohio May 28, 2015), *report and recommendation adopted*, 2015 WL 3822624 (S.D. Ohio June 19, 2015) (holding that an ALJ's finding that a claimant's mental impairment was non-disabling was supported by records documenting mild to moderate symptoms).

A subsequent psychiatric review by Dr. Phay yielded similarly mild findings. Specifically, Dr. Phay concluded that Plaintiff's mental condition causes no limitations in his activities of daily living, no difficulties in maintaining social functioning, and only "moderate" limitations in his ability to concentrate, persist, and maintain pace. (AR 378, 388). The ALJ also noted that neither this psychiatric review nor any other report in the record suggested that Plaintiff's condition met the requirements of any mental listing. (AR 19).

Plaintiff does little to refute these findings, instead focusing on the initial administrative decision's determination that "mild mental retardation" and a general learning disorder represented severe impairments. (AR 78). The Court first notes that a step two finding that a condition is "severe" does not demonstrate the existence of a disabling impairment *See Despins v. Comm'r of Soc. Sec.,* 257 F. App'x 923, 929-30 (6th Cir. 2007) (noting that the mere existence of a severe impairment "does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time"). Moreover, the consultative psychological examiner's report indicates that although a previous evaluation procured by Plaintiff's counsel

suggested that he suffered from "mild mental retardation," Plaintiff actually currently met the "borderline range" of intellectual functioning and enjoyed reading Stephen King novels. (AR 375-76). Plaintiff's reliance on a single IQ score is insufficient to overturn the ALJ's finding that the requirements of Listing 12.05 are not met in the instant matter. *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013) ("A substantial question about whether a claimant meets a listing requires more than what [the claimant] has put forth here, a mere toehold in the record on an essential element of the listing.")

A claimant does not satisfy a listed impairment unless all of the requirements of that listing are present. *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). *See also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting that an impairment that "manifests only some of those criteria, no matter how severely, does not qualify"). The ALJ described in detail the evidence that supports his conclusion with respect to Listing 12.05 and Plaintiff has presented no counterevidence to refute this finding. The Court therefore finds that substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 12.05.


## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 18) be DENIED and the Commissioner's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified

time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge